# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **REGINALD KIRTZ,** | CIVIL ACTION |
| Plaintiff, | |
| v. | NO. 20-5231 |
| TRANS UNION, LLC, <u>et al.</u> | |
| Defendants. | |

Goldberg, J.                                                                                                   May 4, 2021

## MEMORANDUM

Plaintiff Reginald Kirtz has sued multiple Defendants alleging violations of the Fair Credit Reporting Act. One such Defendant, the United States Department of Agriculture Rural Development Rural Housing Service, maintains that it is immune from suit and has filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b). For the following reasons, I will grant this Motion.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

The Complaint sets forth the following facts:[1]

Plaintiff maintained accounts with Defendants, Pennsylvania Higher Education Assistance Agency d/b/a American Education Services ("AES") and United States Department of Agriculture Rural Development Rural Housing Service ("USDA"). On or about July 15, 2016, Plaintiff's AES account was closed with a balance of zero and, on or about June 7, 2018, Plaintiff's USDA account

---

[1] In considering a facial challenge to jurisdiction under Federal Rule of Civil Procedure 12(b), I must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief. <u>Atiyeh v. Nat'l Fire Ins. Co. of Hartford</u>, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

1

was closed with a balance of zero. Plaintiff's credit report from Defendant Trans Union, dated October 10, 2018, showed both accounts closed with a zero balance on or about these dates. (Am. Compl. ¶¶ 10–12.)

Despite the accounts showing a zero balance, both AES and USDA continued to report the status of Plaintiff's payment history ("pay status") as "Account 120 Days Past Due Date" as of the October 10 Trans Union Report. An account that is listed as closed with a balance of zero could not simultaneously be past due, thus, according to Plaintiff, the reported pay statuses were false on their face. Plaintiff asserts that this status misled the algorithms used to determine Plaintiff's credit score by making it appear Plaintiff was still late on accounts that were closed, lowering Plaintiff's credit score and damaging Plaintiff's creditworthiness. (Am. Compl. ¶¶ 10–12.)

Plaintiff sent a letter to Trans Union disputing the inaccurate pay statuses on both the AES and USDA accounts. According to the Complaint, Trans Union did not undertake a good faith investigation into the disputed pay statuses, which would have uncovered the inaccuracy. Plaintiff alleges that Trans Union transmitted the dispute to AES and USDA, neither of which undertook any good faith investigation to uncover and corrected the inaccurate pay statuses. Both AES and USDA continue to erroneously report an overdue pay status, and Trans Union continues to incorporate these statuses in Plaintiff's credit report. (Am. Compl. ¶¶ 16, 18, 20–21.)

Plaintiff filed this action on October 20, 2020, alleging violations of the Fair Credit Reporting Act ("FCRA") against all three Defendants. Specifically, the Amended Complaint sets forth both willful and negligent violations of section 1681s-2(b) against the USDA. The USDA filed the present Motion to Dismiss for Lack of Subject Matter Jurisdiction on January 7, 2021, and Plaintiff responded on January 26, 2021.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may seek dismissal of a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion pursuant to Rule 12(b)(1) challenges the power of the court to hear the case. Petruska v. Gannon Univ., 462 F.3d 294, 302 (3d Cir. 2006). A challenge to jurisdiction may be either facial or factual. Gould Electrs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000) (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). In a facial challenge, the court will limit evaluation to only the allegations in the pleadings and assume the truthfulness of the complaint. Mortensen, 549 F.2d at 891. A factual attack, however, offers no such deference to the plaintiff's allegations and the court may weigh evidence outside of the facts in the pleadings to determine whether jurisdiction exists. Id.

## III. DISCUSSION

The USDA's challenge to subject matter jurisdiction here is facial and asserts that the Court lacks jurisdiction over this case pursuant to the doctrine of sovereign immunity. The USDA contends that the FCRA contains no waiver of immunity that would allow Plaintiff to bring suit against it. Plaintiff responds that the FCRA allows civil action for damages against "[a]ny person" who negligently or willfully violates the substantive provisions, and the Act defines "person" to include "government or governmental subdivision or agency" thus providing a waiver of sovereign immunity.

Under the doctrine of sovereign immunity, it is well established that the United States is protected from suit in federal court unless Congress has waived such immunity. U.S. v. Bein, 214 F.3d 408, 412 (3d Cir. 2000) (citing United States v. Mitchell, 463 U.S. 206, 212 (1983)). A waiver of the government's immunity "must be unequivocally expressed in statutory text and will not be

implied." Lane v. Pena, 518 U.S. 187, 192 (1996) (citation omitted). Even when a waiver is unequivocally expressed, the scope of that waiver must be strictly construed in favor of the government, settling any ambiguity in favor of immunity. United States v. Williams, 514 U.S. 527, 531 (1995). Ambiguity exists when there is a "plausible" reading of the statute that does not impose "monetary liability on the Government." United States v. Nordic Village, Inc., 503 U.S. 30, 37 (1992). Without such unambiguous waiver, the court lacks subject matter jurisdiction over the case. Bein, 214 F.3d at 412.

The question before me is whether the FCRA contains an express waiver of sovereign immunity for a private right of action[2] alleging a violation of section 1681s-2(b). This section imposes a duty on a person, who furnishes information to a consumer reporting agency ("CRA") and who receives notice from a CRA of a consumer dispute regarding the accuracy of such information, to conduct an investigation and correct information found to be inaccurate or incomplete. 15 U.S.C. § 1681s-2(b). Section 1681n(a) authorizes a private right of action for actual, statutory, and punitive damages against "[a]ny person" who willfully fails to comply with the substantive requirements of the Act, including section 1681s-2(b). 15 U.S.C. § 1681n(a). Additionally, section 1681o(a) authorizes a private right of action for actual damages against "[a]ny person" who negligently fails to comply with the substantive requirements of the Act, including section 1681s-2(b). 15 U.S.C. § 1681o(a). Other than authorizing a private right of action, the FCRA also subjects "[a]ny person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses" to a criminal fine and or imprisonment. 15 U.S.C. § 1681q. Finally, the FCRA authorizes the Federal Trade Commission,

---

[2] A private right of action is "the right of an individual to bring suit to remedy or prevent an injury that results from another party's actual or threatened violation of a legal requirement." Wisniewski v. Rodale, Inc., 510 F.3d 294, 297 (3d Cir. 2007).

the Consumer Financial Protection Bureau, and state governments to commence investigations and enforcement actions against "person[s]" who violate the substantive provisions of the FCRA. 15 U.S.C. § 1681s. The FCRA defines "person" as "any individual, partnership, corporation, trust, estate, cooperative, association, *government or governmental subdivision or agency*, or other entity." 15 U.S.C. § 1681a(b) (emphasis added).

Although the United States Court of Appeals for the Third Circuit has not ruled on whether the FCRA contains a waiver of sovereign immunity, three other Circuit Courts have examined this issue. Compare Robinson v. U.S. Dep't of Educ., 917 F.3d 799, 806 (4th Cir. 2019) (holding that the FCRA did not unequivocally waive the DOE's sovereign immunity), cert. denied, 140 S. Ct. 1440,[3] and Daniel v. Nat'l Park Serv., 891 F.3d 762, 769 (9th Cir. 2018) (holding that the FCRA is ambiguous thus did not unequivocally waive sovereign immunity); with Bormes v. United States, 759 F.3d 793, 795 (7th Cir. 2014) (holding the FCRA waived sovereign immunity).

As noted above, in Bormes, the Seventh Circuit found that the FCRA permits suit against a federal government entity. Bormes, 759 F.3d at 795. There, the Court reasoned that the statute authorizes suit against "any person," which includes "any . . . government." Because "[t]he United States is a government," the Bormes court concluded that Congress expressly waived immunity. Id. The Court explained that the government conceded it was a "person" under the substantive requirements of the FCRA, thus its argument that it was not a "person" for the liability sections was not supported by the statutory language. Id. Additionally, the Court noted that exposing federal employees to criminal liability was "not so outlandish that we should read § 1681a(b) to mean something other than what it says." Id. at 796.

---

[3] The Supreme Court recently denied certiorari in this case, with Justice Thomas dissenting and noting that "this important question has divided the Courts of Appeals." Robinson, 140 S. Ct. at 1440 (2020) (Thomas, J. dissenting).

The Fourth and Ninth Circuits, however, have reached the opposite conclusion and found that the FCRA does not unequivocally waive sovereign immunity. Robinson v. U.S. Dep't of Educ., 917 F.3d 799, 806 (4th Cir. 2019), cert. denied, 140 S. Ct. 1440; Daniel v. Nat'l Park Serv., 891 F.3d 762, 769 (9th Cir. 2018). In Daniel, the Ninth Circuit reasoned that reading "person" to include the United States and its agencies leads to implausible results such as imposing excessive punitive damages, federal and state enforcement liability, and criminal liability against the United States. 891 F.3d at 770. The Court explained that in the rare case where Congress did authorize punitive damages against the government and/or civil enforcement by one government agency on another government agency, Congress has been clear in waiving immunity. Id. at 771 n. 5 (citing 42 U.S. § 6961). Additionally, the Court reasoned that the legislative history supports the finding that Congress did not intend to waive sovereign immunity in the FCRA. Id. at 774–75. The Court noted that because the original FCRA authorized criminal but not civil liability against a "person," if "person" is read to include the United States, then Congress originally intended to waive immunity only for the purpose of criminal prosecution, which is "patently absurd." Daniel, 891 F.3d at 775 (quoting Al-Haramain Islamic Found., Inc. v. Obama, 705 F.3d 845, 854 (9th Cir. 2012)).[4]

The Fourth Circuit followed similar reasoning in Robinson, stressing that "[t]here is a 'longstanding presumption that "person" does not include the sovereign.'" 917 F.3d at 802 (quoting Vt. Agency of Nat. Res. v. United States ex rel. Stevens, 529 U.S. 765, 780 (2000)). The Court concluded that implausible results would be reached by reading "person" in the FCRA to include the United States. The Fourth Circuit also noted that the fact that the presumption that

---

4     When the FCRA was eventually amended to subject "person[s]" to civil liability, there was no mention of potential costs to the government and the Congressional Budget Office analysis "did not anticipate any costs from defending the federal government against private suits." Daniel, 891 F.3d at 775–76 (citing H.R. Rep. No. 103-486, at 62–63 (1994); S. Rep. No. 103-209, at 32–34 (1994); H.R. Rep. No. 102-692, at 45–46 (1992)).

there is no waiver in the FCRA is bolstered by the fact that established waivers are generally more explicit. Id. at 803–06.

Keeping in mind that "[s]tatutory construction is a holistic endeavor," Koons Buick Pontiac GMC, Inc. v. Nigh, 543 U.S. 50, 60 (2004), for several reasons, I find the reasoning of the Fourth and Ninth Circuits convincing.

First, I agree that reading "person" to include the United States and its agencies throughout the FCRA would lead to illogic results. Such a reading could subject the United States to criminal penalties. See 15 U.S.C. § 1681q. In Bormes, the Court brushed past this issue, reasoning that it "is not so outlandish" that Congress authorized criminal penalties against federal employees. Bormes, 759 F.3d at 796. But as the Ninth Circuit noted in Daniel, the FCRA does not distinguish employees from the government itself and, thus, reading the United States into "person" subjects the government itself to criminal liability, which is untenable. 891 F.3d at 770; see also Conboy v. U.S. Small Bus. Admin., No. 3:18-224, 2020 WL 1244352, at *8 (M.D. Pa. March 16, 2020) (citing Daniel with approval and noting that interpreting "that the United States is a 'person' for purposes of the FCRA and therefore can be subject to the FCRA's criminal penalties" is a "dubious proposition").

The FCRA also authorizes state and federal enforcement against "any person" who violates the substantive requirements of the Act, 15 U.S.C. § 1681s, but is silent about a lawsuit against a government entity. In the rare case where Congress does permit the use of such an enforcement scheme against a governmental entity, the applicable statute is clear and explicit in waiving sovereign immunity. See Daniel, 891 F.3d at 771 n. 5 (citing. 42 U.S.C. § 6961). For example, in the Resource Conservation and Recovery Act ("RCRA"), Congress authorized the Environmental Protection Agency to enforce compliance and "expressly waives any immunity otherwise

applicable to the United States . . . ." 42 U.S.C. § 6961. Notably, the definition of "person" in the RCRA also explicitly includes "each department, agency, and instrumentality of the United States." 42 U.S.C. § 6903. This language is clearer than the FCRA's broad definition of "any government" and the subsequent express waiver in the enforcement provision of the RCRA reflects that Congress is exceptionally clear when it intends to waive sovereign immunity. Conversely, the FCRA contains no similar express waiver of immunity suggesting that Congress did not intend to allow "state and federal enforcement" actions against the Government.

Second, as the Fourth and Ninth Circuits noted, reading the FCRA's definition of "person" as waiving sovereign immunity would expose the Government to punitive damages. See 15 U.S.C. § 1681n(A)(2) (authorizing punitive damages against "any person" for a willful violation of the Act). "There is a 'presumption against the imposition of punitive damages on governmental entities." Daniel, 891 F.3d at 771 (quoting Vt. Agency of Nat. Res. v. United States ex rel. Stevens, 529 U.S. 765, 785 (2000)). Similar to criminal and civil enforcement provisions, Congress uses clear and unambiguous language when it intends to waive immunity for punitive damages. See Daniel, 891 F.3d at 771.[5]

Third, the "longstanding interpretive presumption that 'person' does not include the sovereign" should be followed absent an "affirmative showing of statutory intent to the contrary." Vt. Agency of Nat. Res., 529 U.S. at 780–81 (citing United States. v. Cooper Corp., 312 U.S. 600, 604 (1941); Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund, 500 U.S. 72, 83 (1991)). Even when a term is defined in the statute, it may be appropriate to "consider the ordinary meaning . . . particularly when there is a dissonance between that ordinary meaning and the reach of the definition." Bond v. United States, 572 U.S. 844, 861 (2014). The implausible results of imposing

---

5   Section 1681u of the FCRA discussed below reflects this express language within the FCRA itself. See 15 U.S.C. §. 1681u.

8

criminal liability, civil enforcement actions, and punitive damages against the United States supports the presumption that "person" is not meant to include the sovereign in the FCRA.

Fourth, the express waiver of sovereign immunity in another section of the FCRA demonstrates that Congress did not intend to waive such immunity in the liability sections at issue here. Section 1681u prohibits certain disclosures on credit reports "that the Federal Bureau of Investigation has sought or obtained access to [certain] information or records . . . ." 15 U.S.C § 1681u(d)(1)(A). Section 1681u(j) specifically authorizes statutory, actual, and punitive damages against "[a]ny agency or department of the United States" for violating the substantive provisions of section 1681u. 15 U.S.C. § 1681u(j). This section demonstrates that Congress uses particular and explicit language in waiving immunity. While the substantive provisions of section 1681u deal with disclosures by government agencies and would not apply to other actors, the language of the liability section is nonetheless instructive as to how Congress unambiguously waives immunity. This section thus "clouds whether the remedial provisions" relied upon in the present case "extend 'unambiguously' to monetary claims against the United States." Daniel, 891 F.3d 762, 771 (9th Cir. 2018) (citing Ordonez v. United States, 680 F.3d 1135, 1138 (9th Cir. 2012)).

Fifth, a review of other express waivers of sovereign immunity reveals that the definition in the FCRA does not meet the level of explicitness that Congress ordinarily uses to waive immunity. For example, the Little Tucker Act provides that "[t]he district courts shall have original jurisdiction . . . of . . . [a]ny other civil action or claim against *the United States*." 28 U.S.C. § 1346(a) (emphasis added). Additionally, the Federal Tort Claims Act explicitly states "*[t]he United States* shall be liable . . . in the same manner and to the same extent as a private individual . . . ." 12 U.S.C. § 2674 (emphasis added). Not only do these waivers expressly mention "the United States," the waiver is found in liability sections and is not deduced from broad language in

the definition section. A comparison of the language and structure of the FCRA to these waivers, as well as many others, [6] makes clear that FCRA is ambiguous and does not show Congress's unequivocal expression of an intent to waive immunity for civil suits.

Examination of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, which has similar language to the FCRA, is also instructive. See also Ordille v. U.S., 216 F. App'x 160, 164 (3d Cir. 2007). The ECOA authorizes a private right of action against any "creditor" who violates the Act's substantive provisions and defines "creditor" to include "any person," which includes a "government or governmental subdivision or agency. . . ." § 1691a(e), (f). While this language is almost identical to the FCRA, the two statutes contain key distinctions that necessitate different findings on the issue of sovereign immunity. First, unlike the FCRA, the ECOA does not impose criminal liability, meaning there is no implausible result of subjecting the government to criminal penalties by reading "creditor" to include the United States throughout the statute. Second, while the ECOA authorizes punitive damages, that authorization contains an express exemption for "a government or governmental subdivision or agency," which clearly evidences Congress's intent to subject the government to civil suits for actual damages. See Stellick v. U.S. Dep't of Educ., No. 11-cv-0730, 2013 WL 673856, at *3–4 (D. Minn. Feb. 25, 2013).

Finally, although the Third Circuit has not explicitly ruled on whether the FCRA contains a waiver of sovereign immunity, it has shown a tendency to strictly interpret other waivers of immunity. See, e.g., Gentile v. Sec. & Exch. Comm'n, 947 F.3d 311, 315–317 (3d Cir. 2020) (holding that a narrow construction of the Administrative Procedure Act's waiver of sovereign immunity does not extend to agency decisions to initiate investigation); United States v. Craig,

---

[6] "Indeed the words 'United States' appear in a great many waivers." Robinson v. U.S. Dep't of Educ., 917 F.3d 799, 803 (4th Cir. 2019) (first citing 12 U.S.C. § 3417(a); then citing 42 U.S.C. § 9620(a)(1); then citing 26 U.S.C. § 7433(a); and then citing 46 U.S.C. § 30903(a)).

10

649 F.3d 509, 513 (3d Cir. 2012) (construing the Civil Asset Forfeiture Reform Act and Federal Rule of Civil Procedure 41(g) narrowly as to not waive immunity for the payment of monetary interest on returned property); Cudjoe ex rel. Cudjoe v. Dep't of Veterans Affairs, 426 F.3d 241, 248 (3d Cir. 2005) (reading the waiver in the Toxic Substance Control Act narrowly as to not extend to private suits for money damages); Antol v. Perry, 82 F.3d 1291, 1297–98 (3d Cir. 1996) (declining to incorporate the waiver in the Rehabilitation Act into the Vietnam Era Veterans' Readjustment Assistance Act simply because the latter mentions the former).

In short, the mere fact that a statute can be plausibly read to contain a waiver of sovereign immunity is insufficient. A waiver must be unambiguous. See Cudjoe ex rel. Cudjoe v. Dep't of Veterans Affairs, 462 F.3d 241, 247 (3d Cir. 2005) (citing United States v. Nordic Village, Inc., 503 U.S. 30, 37 (1992) ("Language subject to varying interpretations will not be construed as a waiver.")). The FCRA does not contain such an unambiguous waiver of sovereign immunity. Therefore, I conclude that the USDA is immune from suit, and I lack jurisdiction over the claims against it. Accordingly, I will grant the USDA's Motion to Dismiss for Lack of Subject Matter Jurisdiction.